

**Dated: August 20, 2015**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM H. ROLIN, | ) | CASE NO. 12-16236-JDL |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| WILLIAM H. ROLIN and LORA ROLIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 13-1030-JDL |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, AS | ) | |
| TRUSTEE FOR MORGAN STANLEY | ) | |
| MORTGAGE LOAN TRUST 2007-6XS; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION DENYING
MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND RESETTING TRIAL DATE**

This matter before the Court is a *Motion to Enforce Settlement Agreement* filed by

Defendants U.S. Bank National Association and Mortgage Electronic Registrations

Systems, Inc. (collectively the "Defendants") [Doc. 105] and the *Response* thereto filed by

Plaintiff, William Rollin  [Doc.112].[1]  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)( A),(B), (K)  and (O).

## Background

This  is  an  adversary  proceeding,  like  many  others,  arising  out  of  the  loan securitization and mortgage crisis of the first decade of this century.  Plaintiffs filed this action asserting that Defendants lacked standing to enforce the promissory note and the real  estate  mortgage  on  Plaintiffs'  residence  which  secured  it.    Plaintiffs  sought  a declaratory judgment that Defendants had no enforceable secured or unsecured claim against Plaintiffs' property and actual and punitive damages due to the Defendants' alleged filing  of  a  false  proof  of  claim  and  charging  illegal  and  unlawful  post-petition  fees  and charges.

After more than two years of litigation, the parties attempted to reach a settlement which Defendants reduced to writing in a Confidential Settlement and Release Agreement (the "Settlement Agreement"), Loan Modification Agreement and Stipulation for Dismissal. "Plaintiff agrees that the settlement agreement as reach between the parties should be enforced." [ *Response* , pg.1].  Plaintiffs, however, contend that the  Settlement Agreement as presented by Defendants fails to reflect the agreement of the parties in three areas:  (1) while Plaintiffs are giving  Defendants a general release of claims, there is no reciprocal release of claims against Plaintiffs by Defendants, (2) the proposed agreement contains

_____

[1] The *Objection* was filed only by the Plaintiff William Rolin; however, since both Plaintiffs are to be signatories to the proposed Settlement Agreement they will be referred to herein as "Plaintiffs".

a waiver of the right to jury trial by Plaintiffs, and (3) the agreement provides that Plaintiffs consent to relief from the automatic stay should Plaintiffs file bankruptcy in the future.

### Discussion

"The court has the power to summarily enforce a settlement agreement entered into by the litigants while litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."). Because a settlement agreement is a contract, "issues involving the formation, construction and enforceability of the settlement agreement are resolved by applying state contract law". *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Oklahoma law provides that the four elements necessary to have a binding contract are competent parties, consent, a legal object and consideration. *Intercon Mfg v. Centrifugal Casting Machinery Co.,Inc*. v. 1993 OK CIV APP 143, 875 P.2d 1149; *Langdon v. Saga Corporation*, 1976 OK CIV APP, 569 P.2d 524.

"For the Court to enforce a settlement agreement the evidence must show that the parties agreed upon all essential terms . . . and it must appear that further negotiations are not required to work out the essential terms". *Beck v. Reynolds,1995 OK 83,¶ 11, 903 P.2d 317 , 319 ; Shoels v. Kiebold,* 375 F.3d 1054, 1062 (10th Cir. 2004); *Chicano Police Officers Association v. Stover*, 624 F.2d 127 (10th Cir 1980). However, uncertainty as to non-essential terms or small items will not preclude the enforcement of a settlement agreement. Finally, courts have indicated a strong policy favoring dispute resolution rather than protracted litigation, and so long as "the terms of the settlement agreement are clear,

unambiguous, and capable of enforcement" and the parties have reached a meeting of the minds, resolution of claims by settlement is preferred. *City and County of Denver v. Adolph Coors Co.*, 813 F. Supp. at 1479; *United Mine Workers District No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 810 (10th Cir. 1981).

As stated, for the Court to enforce the purported settlement agreement it must be shown that the parties have agreed upon <u>all</u> of the "essential" terms.  That the parties must agree on all essential terms, of course, begs the question what is an "essential" term, as contrasted to a non–essential term.  The law is not particularly helpful on this issue, as the cases are legion in reciting the general, and generally unhelpful, proposition that "what constitutes an essential term of the contract will vary widely according to the nature and complexity of each transaction and must be evaluated on a case specific basis". *In re Rolsafe International, LLC* , 477 B.R.894 ( Bankr. M.D. Florida 2012).

### Defendants Releasing Plaintiff of All Claims

In the present case, the first dispute over the terms of the settlement agreement revolve around whether it was contemplated that there would be a "mutual release" of the parties.  Plaintiffs refuse to sign the Settlement Agreement because they believe that the release contained in the agreement is one-sided - Defendants obtaining a release from Plaintiffs, but Plaintiffs not obtaining one from Defendants.  In particular, Plaintiff complains that the Settlement Agreement proposed by Defendants "strips him of all his defenses while preserving Defendants' claims associated with the original loan". [*Response*, pg. 4].  There is little doubt that the obtaining of a release of claims is normally one of the two essential terms of any settlement agreement, the other being the payment of money by one of the

4

parties.  An analysis of the proposed settlement agreement reveals, however, that both sides <u>are</u> obtaining a mutual release of claims to the extent that it is possible to do so.

By its terms, a general release releases all claims, actions, and damages arising from or relating to a particular incident or event or relationship between the parties.  A general release covers only those matters about which there was some dispute, and not a future claim.  In other words, a general release will not be construed to bar the enforcement of the claim that had not accrued as of the date of the release.

The release provisions of the Settlement Agreement are found in several places:

1.  Numerical ¶ 1 (b) provides that "Borrowers and counsel for Borrowers hereby release any and all claims for attorneys fees or other liens against US Bank, Mers and US Bank's counsel in connection with the settlement of this action".

2.  Numerical ¶ 3 provides that "The Parties agree to dismiss the Action with prejudice and without costs . . . (and) the Parties' counsel shall execute the Stipulation and Order to Dismiss attached as exhibit B" to the agreement".

3.  Numerical ¶ 6 provides that "Borrowers hereby unconditionally, irrevocably, forever and fully release, acquit, and forever (discharge) Ocwen and its predecessors, successors, assigns etc., of and from any and all claims, demands, actions, causes of action, suits, liens, debts, obligations, promises, agreements, costs, damages, liabilities and judgments . . . which were or could have been raised in, arise out of of, relate to, or in any way, directly or indirectly, involve the Action, the Note, the Mortgage, or the Loan. *** It is the intention and effect of this release to discharge all claims that the release source have against the releasees up until and including the date of the execution of this Agreement".

4.   Numerical ¶ 7 provides that Borrowers (Plaintiffs) are releasing any claims, demands actions, cause of action, etc., that may exist on the effective date of the Agreement notwithstanding that such claims, demands, actions, etc., may not be known by the Plaintiffs at the time of the making of the Agreement.

5.   Numerical ¶ 8 provides that "the Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; (2) any future disputes between Borrowers, Investor and Ocwen, including its/their successors and assigns, which arise out of or relate to the Parties concerning relationship as mortgagor and mortgagee; and (3) Ocwen's and Investor's . . . right to foreclose".

The upshot of these provisions is that (1) Plaintiffs are releasing Defendants of any liability which existed prior to the execution of the Settlement Agreement, notwithstanding whether or not Plaintiffs were aware of such liabilities and (2) both Parties are retaining any and all future claims that they might have against each other arising out of the Settlement Agreement and out of the continuing mortgagor and mortgagee relationship.  At first blush, this leaves unaffected any potential pre-Settlement Agreement claims which the Defendants might have against Plaintiffs. There, Plaintiffs assert, "lies the rub".  Upon further analysis, however, Plaintiffs are not so exposed.

The mortgagor/mortgagee relationship between Plaintiffs and Defendants (and its successors and assignees) going forward is to be governed by a Loan Modification Agreement.  Numerical ¶ 2 of the Settlement Agreement expressly incorporates the Loan Modification Agreement into the Settlement Agreement and provides that nothing in the Settlement Agreement "will be construed as contradicting the terms of the Loan Modification Agreement with respect to the modified loan terms".  In turn, ¶ E of the Loan Modification

Agreement provides that "the parties have agreed that Ocwen shall refrain from exercising the rights and remedies granted to it by the Loan Documents and, instead, agree to modify the terms of Borrower's obligations under the Loan Documents pursuant to the terms and conditions set forth in this Modification".  Paragraph F of the Loan Modification Agreement provides that "Ocwen has agreed to adjust the repayment terms of the Original Note, and the total amount due with respect to the Original Note and Ocwen has also agreed to reinstate the Loan as current and not in default as of the Effective Date" of the Loan Modification Agreement.

The effect of the combination of the Settlement Agreement and the Modification Agreement is that Plaintiffs are deemed current and no longer in default, whether monetary or non-monetary, under the original Note and Mortgage.  These provisions constitute an effective release of Plaintiffs from all pre-settlement liabilities.  Thus the question, why not include a provision which states that?  The practical answer lies in the reluctance of lenders to entirely extinguish an original note and thus create a "novation".  A "novation" (or substitute contract)  is the replacement of an unexpired contract by another contract reached through renegotiations, or the substitution of a new party with the concurrent release of an original party from liability.  *Williams Petroleum Co. v. Midwest Cooperatives, Inc.*, 679 F.2d 815 (10th Cir. 1982); *Warren Petroleum Corp. v.  Federal Power Commission*, 282 F.2d 312 (10th Cir. 1960); *Cardwell Inv. Co. v.  United Supply & Mfg. Co.*,  268 F.2d 857 (10th Cir. 1959); *Circle v. Jim Walter Homes, Inc.*, 470 F.Supp. 39 (W. D. Okla. 1979).  The Settlement Agreement provides in ¶ 12, entitled "No Novation," that the Loan Modification "is not a new loan from Ocwen but simply the modification of Borrowers existing obligations

under the Loan Documents".  A provision in the Settlement Agreement by which Defendants would release Plaintiffs of "all claims and liabilities heretofore existing" may well be construed as an extinguishment of all obligations under the original note and a novation of the same original note.  Such release language would conflict with or create an ambiguity with regard to the "no novation" provision of the Loan Modification Agreement.

From a lender's standpoint, the biggest concern with a novation is that because the original obligation of the note is extinguished the corresponding mortgage lien would also disappear.  *Ambrister v. Dalton*, 168 P. 231 (Okla. 1917). The essential feature of a mortgage is that it is an accessory obligation.   As such, it cannot exist independent of the principal obligation which it secures.  See e.g. *Las Brisas, S.E. v. Department of Agriculture Farmers Home Administration*, 8 F. Supp. 2d 141 (D. P.R. 1998).  If the original Note were deemed extinguished, Defendant's mortgage would also be extinguished with the result in loss of its priority as against other potential lien claimants whose interest would have been heretofore subordinate to Defendant's mortgage.

Thus, there is a sound reason why Defendants would not give a mutual full release of claims as it requested from Plaintiffs.  While the inclusion of such a release would have a significant downside or risk to Defendants, there is no downside or risk to Plaintiffs by the exclusion of such release language in the Settlement Agreement. As stated above, the Loan Modification Agreement and its incorporation into the Settlement Agreement provides for what Plaintiffs have negotiated:  (1) a new substantially discounted loan balance, (2) a substantially lower monthly payment, (3) a lower interest rate, (4) payment of Plaintiffs' attorney's fees, and (5) as regards potential claims asserted by Defendants, a provision that Plaintiffs are not in default under any provision of the original Note and mortgage.  In short,

8

as the Court views it, the Settlement Agreement, Loan Modification Agreement and the Stipulation for Dismissal presented to the Court for approval represent the agreement as sought by both parties with respect to the mutual release issue.  Given the history of this litigation, the Court understands the distrust and suspicion of all parties towards the other. Consequently, the Court also understands the desire of Plaintiffs to have "ironclad" written settlement terms assuring that Defendants cannot resurrect claims previously raised. However, Plaintiffs are being afforded as much protection from potential claims of Defendants as can be done under the circumstances. The Court, therefore, finds that the terms of the Settlement Agreement insofar as they concern the mutual release issue raised by the Plaintiff would be enforceable.

### Waiver of Right to Jury Trial

The second issue raised by the Plaintiffs is the waiver of right to jury trial.  Numerical paragraph 17 of the Loan Modification Agreement incorporated by reference into the Settlement Agreement entitled **"Trial by Jury"** provides that Plaintiffs "waive all rights to trial by jury in any action, proceeding or counterclaim arising out of relating to this modification and any related agreements . . .".  Plaintiffs do not agree this was an agreement of the parties to be incorporated into the Settlement Agreement.

Agreements waiving the right to trial by jury are neither illegal nor contrary to public policy. *Tellum v. E.F. Hutton* , 859 F.2d 835 (10th Cir. 1988); *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir. 1942).  However, the Seventh Amendment right to a jury is fundamental, and there is a presumption against its waiver.  "Contract provisions waiving the right are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly

applied". *Morgan Guaranty Trust Co. of New York v. Crane*, 36 F. Supp. 2d 602, 603-04 (S.D. N.Y. 1999). Here, Plaintiffs say they will not voluntarily agree to relinquish that fundamental right. End of story. This is clearly an essential term upon which there is no agreement. Therefore the proposed waiver of jury trial provision is not enforceable.

**Inclusion of an Agreement to Waive the**
**Protection of the Automatic Stay**

The final issue raised by the Plaintiffs is contained in numerical paragraph 9 (b) of the Loan Modification Agreement incorporated into the Settlement Agreement which provides that if Plaintiffs file bankruptcy in the future they consent to relief from the automatic stay which might otherwise be imposed to prevent Defendants or Ocwen from proceeding with foreclosure.

The enforceability of pre-petition waivers of the right to seek relief in Bankruptcy Court or the waiver of specific bankruptcy benefits has produced substantial litigation. Some courts have held that such pre-petition waivers of bankruptcy benefits are unenforceable. See e.g. *In re DB Capital Holdings, Inc*., 454 B.R. 804 (Bankr. D. Colo. 2011); *Matter of Pease*, 195 B.R. 431, 432 (Bankr. Neb. 1996). On the other hand, several courts have found the pre-petition waiver of bankruptcy benefits are valid and enforceable. See e.g. *In re Gulf Beach Development Corp*., 48 B.R. 40 (Bankr. M.D. Florida 1985); *In re 4848, LLC*., 490 B.R. 343 (Bankr. E.D. Wisc. 2013) ("The public policy goal of encouraging out-of-court restructuring in settlement supports the enforceability of the pre-petition waiver of the automatic stay included in a forbearance agreement".). This Court need not decide the issue of whether a pre-petition waiver of the benefit of the automatic stay is enforceable. Suffice it to say that the automatic stay is one of the fundamental debtor protections

provided by the bankruptcy laws. *In re Jenkins Court Assocs. Ltd. Partnership*, 181 B.R. 33 (Bankr. E.D. Pa.1995). As such, it is obviously regarded as an "essential term" requiring the agreement of the parties so as to permit this Court to enforce it. There is clearly no agreement as to the provision here, and therefore the court will not enforce it.

## Conclusion

Defendants seek enforcement of the Settlement Agreement presented with their *Motion to Enforce Settlement Agreement*. Plaintiff agreed to the proposed Settlement Agreement except in three particulars: (1) Defendants' failure to include a complete release of all pre-settlement claims which may have been held by Defendants; (2) the waiver of Plaintiffs' right to jury trial in the event of a future dispute, and (3) Plaintiffs' consent to the lifting of the automatic stay in the event of a subsequent bankruptcy. With regard to issue 1, the Court finds that when read in the total context of the Settlement Agreement, the Loan Modification Agreement and the Stipulation for Dismissal, there is sufficient language providing Plaintiffs with a release of pre-settlement claims of Defendant, thus this essential term would otherwise be enforceable. However, with regard to issues 2 and 3, the Court finds those to likewise be essential terms of the settlement and as to which there is no agreement between the parties. Since all essential terms have not been agreed upon, the Court is not permitted to pick and choose what essential terms are to be enforced in the Settlement Agreement but must deny enforcement of the entire Settlement Agreement. Accordingly, the *Motion to Enforce Settlement Agreement* is hereby **DENIED.**

This matter will be reset for Trial on **November 17, 2015, at 9:30 A.M.** [2]

# # #

---

[2] Deadlines set forth in the Fifth Amended Scheduling Order entered September 23, 2014, [Doc. 85] shall remain in force and effect. No further continuances shall be granted except for extremely compelling reasons. Further, in the absence of unforeseeable personal reasons, continuances shall not be granted within 20 days prior to the trial date.